J-A30027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| STEWART TITLE GUARANTY COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| HERITAGE LAND TRANSFER CO. | |
| Appellee | No. 442 EDA 2015 |

Appeal from the Judgment Entered March 9, 2015
In the Court of Common Pleas of Chester County
Civil Division at No(s): 12-12637

BEFORE:  MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED December 24, 2015**

Stewart Title Guaranty Company ("STGC") appeals from the judgment entered against it and in favor of Heritage Land Transfer Co. ("Heritage") following a bench trial in the Chester County Court of Common Pleas.  We vacate the judgment and remand for further proceedings.

Pursuant to the January 15, 1997 Title Insurance Underwriting Agreement between the parties ("Agency Agreement"), STGC appointed Heritage as its nonexclusive limited agent to, *inter alia*, issue title commitments and title policies on STGC's behalf in the Commonwealth of Pennsylvania.  N.T., 6/5/2014, at 66-67.  Section 5 of the Agency Agreement contained a "Division of Loss and Loss Expense" clause stating:

_____

[*] Former Justice specially assigned to the Superior Court.

The term 'Loss' shall include the amount paid to or for the benefit of the insured as well as loss adjustment expense including any cost of defending the claim resulting in the loss.

(a) On each such loss due to the fraud or intentional act or omission of [Heritage] or its employees, representatives, or agents, or due to the negligence thereof [Heritage] shall be liable to [STGC] for the entire amount of such loss including, but not limited to, attorneys' fees, litigation expenses, and costs of settlement negotiations, such losses included but are not limited to:

(1) Failure of title plant to disclose matters causing losses.
(2) Failure to discover or report any instrument of recording affecting title.
(3) Violations of escrow instructions.
(4) Failure to follow underwriting guidelines and/or instructions of [STGC].
(5) Failure to prepare a title policy which shows defects and matters affecting title disclosed in the title search or which should have been disclosed in the title search.

Pl. Trial Exh. 22, at 5; N.T., 6/5/2014, at 49, 70.

In April 2001, North American Mortgage extended a loan to Steven and Leslie Jones, which was secured by a mortgage dated April 12, 2001 ("North American Mortgage"). N.T., 6/5/2014, at 13. Heritage handled the title and settlement work for this loan. *Id.* This mortgage was not recorded until July 24, 2001.[1] *Id.* at 14. Heritage handled the title work and

---

[1] The parties dispute whether Heritage failed to fulfill its obligations regarding the recording of the mortgage. STGC claims Heritage was negligent because the deed was not recorded until three months after the mortgage was signed. Appellant's Brief at 9. Heritage claims it submitted the mortgage for recordation in May and any delay in the recording of the mortgage was due to the governmental offices. Appellee's Brief at 3-4.

- 2 -

settlement for the North American Mortgage and issued to North American a lender's Policy of Title Insurance ("Title Policy"), underwritten by STGC. *Id.* at 18. The Title Policy insured that the North American Mortgage was a first-position lien against the property. *Id.* at 17; Pl. Exh. 4.

On June 22, 2001, PNC Bank extended a line of credit in the amount of $140,000.00 to Mr. and Mrs. Jones, which was secured by an open-end mortgage ("PNC Mortgage"). N.T., 6/5/2014, at 14. This mortgage was recorded on July 13, 2001, 11 days before the North American Mortgage was recorded. *Id.*

On May 17, 2006, Washington Mutual, Assignee of the North American Mortgage, submitted a claim to STGC under the Title Policy because of the existence of the superior PNC Mortgage lien. N.T., 6/5/2014, at 13-15. After the claim was submitted, the North American Mortgage was assigned to U.S. Bank, N.A., as trustee. STGC retained Michael P. Coughlin, Esq., as counsel in connection with the notice of claim. *Id.* at 20. Mr. Coughlin contacted First Financial Bank, the assignee of the PNC mortgage requesting First Financial's consent to subordinate the PNC Mortgage to the North American Mortgage. *Id.* at 23. First Financial did not consent. *Id.* at 24-25.

A July 1, 2006 property appraisal valued the property at $500,000.00. N.T., 6/5/2014, at 23. At that time, U.S. Bank was owed $440,000.00 and First Financial was owed at least $140,000.00. *Id.*

STGC commenced an action on behalf of U.S. Bank and against First Financial, asserting claims for quiet title, equitable subrogation/unjust enrichment, and equitable lien. N.T., 6/5/2014, at 26-29.

The litigation was "hotly contested." N.T., 6/5/2014, at 32. Judge Griffith denied summary judgment motions filed by both parties and the parties prepared for trial. *Id.* at 33. During trial preparation, STGC learned that the amount owed to First Financial had increased from approximately $140,000.00 to approximately $173,102.25, that the amount owed to U.S. Bank had increased from approximately $440,000.00 to approximately $518,585.00, and that the value of the property had decreased from approximately $500,000.00 to approximately to $440,000.00. *Id.* at 34-35, 37.

The parties entered settlement discussions. N.T., 6/5/2014, at 36. STGC offered to pay Harleysville, successor in interest to First Financial, $35,000.00 in exchange for execution of a subrogation agreement. *Id.* at 36. Harleysville countered, offering to execute the agreement in exchange for $173,102.25. *Id.* at 37.

The parties attended a settlement conference on November 25, 2008, with trial scheduled for December 9, 2008. N.T., 6/5/2014, at 37; N.T., 6/6/2014, at 56. Heritage did not attend the conference. STGC, however, presented evidence that it notified Heritage of the conference prior to its

date.[2]   N.T., 6/6/2014, at 57-58.   At the conference, the judge recommended the parties settle for $75,000.00, and the parties "reluctantly" agreed.  *Id.*

On November 26, 2008, STGC notified Heritage of the settlement terms, and Heritage did not claim the settlement was unreasonable.  N.T., 6/5/2014, 38; N.T., 6/6/2014, at 58.  STGC sought indemnification from Heritage, which refused.  N.T., 6/5/2014, at 84.

On November 30, 2012, STGC commenced this action by writ of summons.  On February 15, 2013, it filed a complaint seeking contractual indemnification.

The trial court conducted a non-jury trial on June 5, 2014, June 6, 2014, and June 12, 2014.  On October 3, 2014, it issued its decision, entering judgment in favor of Heritage and against STGC.  On October 13, 2014, STGC filed post-trial motions, which the court denied on January 16, 2015.  STGC filed a notice of appeal on February 5, 2015.

---

[2] Heritage claims it did not have notice of the conference.  Carmen Rego, president and CEO of Heritage, testified that he informed STGC's counsel that Heritage wanted to be involved in the process, but did not learn of the settlement until his employee Brian Haines informed him that the parties had reached a settlement.  N.T., 6/6/2014, at 182, 204-208.  Mr. Rego claimed that Sharon Burke, a paralegal for STGC's counsel, was incorrect when she stated Mr. Haines was Heritage's in-house counsel.  *Id.* at 206. STGC presented evidence that it forwarded emails to Mr. Haines, whom it believed was Heritage's in-house counsel, notifying Heritage of the settlement and trial dates and admitted as an exhibit the forwarded emails. Pl. Exh. 42.

On March 6, 2015, this Court ordered STGC to file a praecipe in the trial court for the prothonotary to enter judgment, and STGC complied. On March 9, 2015, the prothonotary entered judgment.

Both STGC and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

STGC raises the following claim on appeal:

> Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion when it failed to find that [STGC], established that the [s]ettlement entered into with [Harleysville] was reasonable and [that STGC] was, therefore, entitled to recovery from [Heritage] by way of contractual indemnification.

Appellant's Brief at 5.

This Court's review of a non-jury trial verdict is

> limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Christian v. Yanoviak*, 945 A.2d 220, 224 (quoting *Hart v. Arnold*, 884 A.2d 316, 330–331 (Pa.Super.2005)). The trial court's findings are binding on appeal, "where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved

the evidence." *Id.* (quoting *Hart*, 884 A.2d at 331). "Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court." *Id.* (quoting *Tagliati v. Nationwide Insurance Co.*, 720 A.2d 1051, 1053 (Pa.Super.1998)). "With regard to such matters, our scope of review is plenary as it is with any review of questions of law." *Id.*

The trial court and Heritage allege STGC waived its claim challenging the trial court's finding that STGC failed to establish the settlement was reasonable because STGC's 1925(b) statement was vague and not concise. We find STGC did not waive its claims.

STGC appealed from the trial court's order finding in favor of Heritage and against STGC. The order included the following footnote:

> In this case, [STGC] reached a settlement and made a voluntary payment to a third party and then brought this suit against [Heritage] claiming that it was entitled to indemnification. No judgment was rendered against [STGC] herein which significantly alters [STGC's] burden of proof. "In [*Wise Shoes, Inc. v. Blatt*, 479, 164 A. 89, 91 (Pa.Super.1933)], we stated, 'The right of indemnity against the actual wrongdoer exists whether the one held liable in the first instance pays the loss voluntarily or has a judgment recovered against him. The fact of voluntary payment does not negative the right to indemnity. It merely varies the degree of proof needed to establish the liability of the indemnitor." [*Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.*, 217 A.2d 781, 783 (Pa.Super.1966) (emphasis added).
>
> "To establish a right to indemnification where a case is resolved by settlement, the party must establish that the settlement was reasonable, that the underlying claim was valid against it, that the claim is within the coverage of the

- 7 -

agreement, and that any counsel fees were reasonable." [**McClure v. Deerland Corp.**, 585 A.2d 19 (Pa.Super.1991)]. Where a claim against an indemnitee has been settled, the burden falls on the indemnitee to prove that the settlement was reasonable. [**Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.**, 217 A.2d 781 (Pa.Super.1966)]." [**County of Delaware v. J.P. Mascaro & Sons, Inc.**, 830 A.2d 587, 593 (Pa.Super.2003) **affd**, 873 A.2d 1285 (Pa.2005)].

"The seminal case in Pennsylvania concerning a suit for indemnification by an agent against a principal is [**Tugboat Indian Company v. A/S Ivarans Reden**, 5 A.2d 153 (Pa.1939)]. . . . In that case, our Supreme Court held, '[I]n order for a party to recover indemnity where there has been a voluntary payment [settlement], it must appear that the party paying the settlement was himself legally liable and could have been compelled to satisfy the claim.' **Id.** [at] 153. . . . **Tugboat** asserted that such a secondarily liable defendant may settle the claim voluntarily and recover against the person from whom it was entitled to indemnity if the settlement was fair and reasonable and if it gave proper notice. ... In rejecting this assertion, our Supreme Court held that one who has ample opportunity to have his rights litigated and can utilize all processes of law to protect himself against an unwarranted demand, but chooses to compromise the claim, is not entitled to a right of recovery over by way of subrogation or indemnity, since payment thus made is not compulsory. The Court further held that 'Pennsylvania cases are unanimous in denying restitution to a person who, contending that another has no valid claim against him, nevertheless makes payment solely because of the threat or the institution of litigation to enforce the demand.' **Id.**,[] at 155.

This holding was reiterated in **Martinique Shoes, Inc.** [217 A.2d at 781], where we reaffirmed the principle that a party making a voluntary payment assumes the risk of being able to prove the actionable facts upon which his liability depends as well as the reasonableness of the amount which he pays. **See also** [**Fox Park Corporation v. James Leasing Corp**, 641 A.2d 315, 317 (Pa.Super.1994)] (party which settles claims and then seeks indemnification must be able to prove its liability and

the reasonableness of its settlement payments).” ***Willard v. Interpool,. Ltd.***, 758 A.2d 684, 687-688 (Pa.Super.Ct. 2000).

In this case, [STGC] simply did not meet the burden of proof established by the aforecited cases.

Order, 10/3/2014, at n.1.

Although the 1925(b) statement was lengthy, STGC had no guidance as to the basis of grant of judgment, which was in a one-paragraph order, with a footnote stating the elements of the claim and finding STGC failed to meet its burden. Further, after the trial court opinion clarified that it based its verdict solely on an alleged failure to establish the settlement was reasonable, Appellant narrowed its claim to focus on this issue. STGC did not waive its issue. ***See Eiser v. Brown Williamson Tobacco Corp.***, 938 A.2d 417, 428 (Pa.Super.2007) (“the number of issues raised in a Rule 1925(b) statement does not, without more, provide a basis upon which to deny appellate review where an appeal otherwise complies with the mandates of appellate practice”).

Where a case is resolved by settlement, to establish a right to indemnification, the plaintiff “must establish that the settlement was reasonable, that the underlying claim was valid against it, that the claim is within the coverage of the agreement, and that any counsel fees were reasonable.” ***County of Delaware v. J.P. Mascaro & Sons, Inc.***, 830 A.2d 587, 593 (Pa.Super.2003) (quoting ***McClure v. Deerland Corp.***, 585 A.2d 19 (Pa.Super.1991)). “[T]he burden falls on the indemnitee to prove

that the settlement was reasonable." *Id.* (citing *Martinique Shoes, Inc. v.*

*New York Progressive Wood Heel Co.*, 217 A.2d 781 (Pa.Super.1966)).

The trial court concluded STGC failed to meet its burden of proving the

settlement was reasonable, stating:

> In this case we are simply not satisfied with the quantum and quality of the evidence presented by plaintiff on this issue. [STGC] presented evidence that it disputed the validity of the claim that a subsequent loan had priority over the lien of its insured. [N.T., 6/5/2014,] at 29. [STGC] brought suit against the subsequent lender to establish that [STGC's] insured did, indeed, have first priority.
>
> The litigation was contested and eventually settled for more than [STGC] wanted to pay, N.T.[, 6/5/2014,] at 38, (and, of course, much less than [Harleysville] wanted to receive.) [STGC's] witness further testified that the Judge supervising the settlement conference "recommended" the settlement. But noticeably absent from [STGC's] evidence is any discussion as to its analysis of why the amount of the settlement was reasonable. Was [STGC's] complaint without merit? Was the argument of the subsequent lender strong? What analysis, if any, did [STGC] undertake to come to the conclusion that it should accept the Judge's recommendation? This evidence is totally absent, which, in our opinion, is conclusive on this issue. [STGC] did present evidence that it invited [Heritage] to participate in the settlement, that [Heritage] declined, and that after the conference it notified [Heritage] of the amount of the settlement and that [Heritage] did not complain about the amount of the settlement or state that it believed the settlement to have been unreasonable or that [STGC] should not have settled the case. [N.T., 6/6/2014,] at 55-58. This evidence does not change the fact that [STGC] had the burden of proof on these issues at this trial. [Heritage] presented evidence that [STGC] believed it was going to prevail in the claim against it and "everything was going to be fine," [*Id.*] at 204, and that [Heritage] had notified [STGC] that [Heritage] wanted to be "very involved in the process" of resolving the claim against

- 10 -

[STGC]. [*Id.*] at 206. In summary, we find the evidence insufficient for us to conclude that [STGC's] settlement of the claim against it was reasonable. Beyond having testified that a judge supervising a settlement conference recommended the settlement,[5] [STGC] presented absolutely nothing. [STGC] presented the witness who could have testified as to the factors which [STGC] considered in entering into the settlement and [STGC's] analysis of the claims and defenses which led [STGC] to the decision to enter into the settlement, but never asked him to testify on those issues. Even after having now reviewed the transcript of the trial testimony, we find unanswered the question "Why did [STGC] agree to this settlement?" Without an answer to that question supporting the contention that the amount of the settlement was reasonable, we find that [STGC] cannot prevail in this action.

> [5] Such recommendation is more often an indication of the amount the judge believes the parties will agree to than an independent evaluation of the merits of the case.

Opinion, 4/22/2015, at 6-8.

The trial court erred in finding STGC presented insufficient evidence to establish the settlement was reasonable. In addition to the testimony cited by the trial court, which included testimony STGC informed Heritage of the settlement conference and the settlement amount, and Heritage did not object to the amount, additional evidence established the reasonableness of the settlement. STGC established the PNC mortgage was recorded first and presented evidence of the value of the property, as well as the amounts owed on the two mortgages, indicating there were insufficient funds to cover the mortgages. N.T., 6/5/2014, at 33-35. It submitted evidence of the

settlement negotiations, during which it offered $35,000.00 and the defendant countered with $173,102.25. *Id.* at 36-37.

Further, by settling, STGC avoided the risk that it would lose at trial. It presented evidence that its claims were not without risk, as Pennsylvania is a first-to-file state, and there was no evidence to explain why the mortgage deed was not recorded. N.T., 6/5/2014, at 20-23, 30, 38, 58-59. Therefore, the risk it would not succeed at trial was real. Although STGC attempted to detail the elements involved in the underlying action, the trial court stated it knew the law behind the claims and that the testimony could be saved for rebuttal. *Id.* at 31.

The evidence presented by STGC established reasonableness, as it presented information concerning the values at issue, the risks of trial, which was scheduled to begin shortly after the conference, and of the positions of the parties prior to settlement, in addition to the evidence that Heritage did not challenge the amount as unreasonable. *See J.P. Mascaro & Sons*, 830 A.2d at 593-94 (finding settlement reasonable where Delaware County Solicitor testified "that the $75,000 settlement of the federal claim was fair and reasonable, falling within the range of payments made by the municipalities group" and testified "that the reason other municipalities were not joined in the state action was due to Delaware County's interest in resolving the matter quickly, avoiding further possible litigation with those municipalities").

Although the trial court, as fact-finder, was free to believe or disbelieve the evidence and determine credibility, the court did not find any of STGC's witnesses to be incredible. Rather, it stated STGC did not present evidence of reasonableness. Accordingly, we find the trial court abused its discretion and its findings lacked evidentiary support. *See Christian*, 945 A.2d at 224.

Heritage next claims the trial court opinion not only found that STGC failed to establish the settlement amount was reasonable, but also found STGC failed to establish the third-party claim against it had merit. Appellee's Brief at 9-10. It concludes that, because STGC did not challenge this finding in its appellate brief, it waived the claim and, therefore, STGC's indemnity claim fails because it did not establish the third-party claim had merit. *Id.* at 10-11. We disagree.

In its 1925(a) opinion the trial court stated:

> [STGC's] statement contains many 'issues' as to which we did not find against [STGC]. In several paragraphs and in various ways, [STGC] does state that we erred in finding that the burden of proof of the reasonableness of the settlement was on [STGC] and that [STGC] had failed to carry its burden. That issue is the only one which we will address in this opinion, since [STGC's] failure to prove that its settlement of the third-party claim against it for which it seeks indemnification from [Heritage] in this case was reasonable was the sole basis for our decision.

1925(a) Opinion, 4/22/2015, at 2. The trial court then made the following statement, relied upon by Heritage, regarding the merits of the underlying claim:

> As noted above, there is also an absence of evidence to support the conclusion that the claim against [STGC] was

- 13 -

valid, another element of [STGC's] claim in this case as to which [STGC] has the burden of proof.

1925(a) Opinion, 4/22/2015, at 7 n.4.[3]

The trial court said its sole basis for finding against STGC was STGC's failure to establish the settlement was reasonable. Although it made passing reference to a failure to establish the underlying claim, it did not provide further reasoning for this conclusion, and the other prior statements regarding the validity of the third-party's claim are ambiguous. We find STGC did not concede this argument, as the trial court stated it based its verdict solely on its belief STGC did not establish the settlement was reasonable.

_____

[3] The trial court also made the following statement regarding the basis of its decision:

> It is true that with respect to some of the issues set forth in the 1925(b) statement, we did not make an explicit finding in favor of [STGC]. Inasmuch as we deemed the failure to have proven the reasonableness of the settlement to be fatal to [STGC's] case, we did not specifically address other issues. For the most part, we would have found in favor of [STGC] on these other issues had we been required to address them. If [STGC] prevails in this appeal, all of these issues will again be in play in the next trial.

1925(a) Opinion, 4/22/2015, at 2 n.2. The trial court made the following statement regarding the merits of the underlying claim: "It is also at least arguable that [STGC] did not prove the validity of the third-party claim against it, another prerequisite to [STGC's] claim against [Heritage] in this case." *Id.* at 2 n.3.

- 14 -

Judgment vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.[4]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2015

---

[4] Heritage's application to dismiss denied.